COMMONWEALTH & another[1] vs. GEORGE W. PRESCOTT
PUBLISHING COMPANY, LLC, & another.[2]

Suffolk. November 9, 2011. - August 23, 2012.

Present: IRELAND, C.J., SPINA, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Impoundment. Search and Seizure,* Warrant, Affidavit. *Practice, Criminal,*
Warrant, Affidavit, Impoundment order, Redaction. *Rape.*

Discussion of the presumptive availability of judicial records to the public.
[262-264]

This court concluded that G. L. c. 41, § 97D, which requires police depart-
ments to maintain the confidentiality of reports they receive regarding rape
or sexual assault, does not apply to search warrant affidavits or other
judicial records. [264-268]

A District Court judge did not err in concluding that no good cause existed to
continue a prior impoundment order regarding a search warrant affidavit
that contained a report of rape or sexual assault, where the judge recognized
that the affidavit contained information of public interest and concern, but
recognized also that the affidavit implicated the complainant's right to
privacy and the defendant's right to a fair trial, and ensured the complainant's
privacy by redacting her name and other identifying information from the
affidavit. [268-271]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on August 9, 2011.

The case was reported by *Lenk,* J.

*Andrew DiCarlo Berman,* Special Assistant District Attorney,
for the Commonwealth.

*Peter F. Carr, II (Charlotte L. Bednar* with him) for William
O'Connell.

*Michael J. Grygiel,* of New York *(Zachary C. Kleinsasser*
with him) for George W. Prescott Publishing Company, LLC.

[1]William O'Connell.

[2]The sole respondent named in the G. L. c. 211, § 3, petition was the
"Criminal Clerk of Quincy District Court." The clerk is a nominal party only
and has not entered an appearance in this court. See S.J.C. Rule 2:22, 422
Mass. 1302 (1996). George W. Prescott Publishing Company, LLC (Prescott),
which publishes the Patriot Ledger, a daily newspaper, was treated by the
single justice as the real party in interest for contesting the order of impoundment.

*Peter J. Caruso*, for Massachusetts Newspaper Publishers Association & others, amici curiae, submitted a brief.

*Martha Coakley*, Attorney General, & *Argie K. Shapiro*, Assistant Attorney General, for Attorney General, amicus curiae, submitted a brief.

DUFFLY, J. The Commonwealth and William O'Connell (collectively, petitioners) filed a petition in the county court, pursuant to G. L. c. 211, § 3, seeking relief from a District Court judge's order releasing from impoundment a redacted version of a search warrant affidavit. The affidavit contains a recitation of allegations made against O'Connell, a prominent Massachusetts real estate developer, that are now the subject of criminal charges of, among other things, statutory rape. On the Commonwealth's motion, the affidavit was impounded shortly after police executed and returned the warrant. George W. Prescott Publishing Company, LLC (Prescott), which had been permitted to intervene in the criminal proceedings in the District Court, sought access to the impounded affidavit on the grounds that the document was presumptively public, and that no good cause existed for continued impoundment. After several hearings, the District Court judge vacated his earlier order impounding the affidavit, but further ordered that the complainant's name and other identifying information be redacted from the affidavit before it was made available to the public.

The petitioners filed their G. L. c. 211, § 3, petition contending that the judge erred in vacating the order of impoundment because the affidavit contains "reports of rape" that are barred from disclosure pursuant to G. L. c. 41, § 97D. They argued also that disclosure would unduly prejudice O'Connell, in violation of his right to a fair trial under the Sixth Amendment to the United States Constitution. The single justice reserved and reported the matter to this court. We conclude that G. L. c. 41, § 97D, does not apply to search warrant affidavits, and that the judge did not err in vacating the order of impoundment.[3]

---

[3]We acknowledge the amicus brief of the Massachusetts Newspaper Publishers Association, New England Newspaper and Press Association, Citizen Media Law Project, and New England First Amendment Coalition on behalf of Prescott, and the amicus brief of the Attorney General.

*Background.* The relevant facts are not in dispute. In March, 2011, the State police investigated allegations that O'Connell had engaged in sexual intercourse with a minor. On March 31, 2011, State Trooper Kathleen Prince obtained a warrant to search O'Connell's condominium unit in Quincy. Prince's affidavit in support of the warrant application included the minor complainant's name and other identifying information, and an extensive recitation of statements made to police by the complainant and others regarding O'Connell's alleged criminal conduct.

On April 5, 2011, after the search warrant had been executed and the return of service filed in the District Court, the Commonwealth moved to impound all materials filed in connection with the search warrant, including the warrant application, Prince's affidavit, and the warrant return. The Commonwealth asserted that the investigation of O'Connell was ongoing, that it was the "clear public policy" of the Commonwealth to protect the identity of child sexual assault victims, and that the search warrant materials "should be held confidential" pursuant to G. L. c. 41, § 97D. That motion was allowed "for six months, until [October] 5, 2011."

On April 27, Prescott, publisher of the Patriot Ledger newspaper, filed a civil complaint in the District Court against the "Clerk-Magistrate of the Quincy District Court," the district attorney for the Norfolk district, and O'Connell, seeking to terminate impoundment of the search warrant materials (civil case). At the same time, Prescott filed an emergency motion to terminate the impoundment order, citing G. L. c. 276, § 2B. Consistent with our common law, that statute provides that search warrant materials are presumptively public after the return has been filed. See *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 222-223 (2004) (*Republican Co.*). After a hearing, the judge determined that good cause existed for continued impoundment, and denied Prescott's motion. The judge indicated also that he would, sua sponte, review the impoundment order on June 1, and that the Commonwealth would bear the burden of "re-applying" for impoundment at that time.

Two days later, a criminal complaint issued in the District Court charging O'Connell with aggravated statutory rape, G. L. c. 265, § 23A; engaging in sexual conduct for a fee, G. L.

c. 272, § 53A; and trafficking in cocaine, G. L. c. 94C, § 32E (*b*) (criminal case). The Commonwealth filed a motion to impound the criminal complaint and related documents, which the judge allowed.[4] Subsequently, Prescott moved to intervene in the criminal case for the limited purpose of terminating or modifying the impoundment order, the same relief it sought through the civil case.

A hearing was held in the criminal case on Prescott's motions to intervene and to terminate or modify the impoundment order. Neither O'Connell nor his attorney was present at the hearing.[5] By agreement of the Commonwealth and Prescott, the judge allowed Prescott to intervene in the criminal case for the purpose of contesting the impoundment order, and dismissed the civil case.[6] The Commonwealth stated that it had no objection to removing from impoundment the narrative portion of the criminal complaint against O'Connell. The judge indicated his intent to release both the narrative portion of the criminal complaint and a copy of the search warrant affidavit with the complainant's name and identifying information redacted. He expressed concern that O'Connell's attorney was not present to oppose release of a redacted affidavit, and scheduled a further hearing at which O'Connell would have an opportunity to object before any of the documents were released from impoundment. The judge also requested that the Commonwealth attempt to arrive at an agreement with O'Connell before the next hearing as to those portions of the search warrant affidavit that should be redacted.

At two subsequent hearings, the Commonwealth argued that continued impoundment of the remaining materials was warranted because the affidavit and other search warrant materials constituted a "report of rape and sexual assault" barred from

---

[4]The Commonwealth also filed a motion to impound all discovery materials, police reports, evidence, and any exhibits submitted to the court by police or the Commonwealth. A different judge allowed that motion.

[5]It appears from the record that O'Connell had retained new counsel shortly before the hearing date, and that his new counsel did not receive notice of it. O'Connell raises no issue regarding his absence from that hearing.

[6]We indorsed this procedure in *Republican Co. v. Appeals Court*, 442 Mass. 218, 227 n.14 (2004) (*Republican Co.*). See generally *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business*, 462 Mass. 76 (2012) (*New England Internet Café*).

public disclosure under G. L. c. 41, § 97D. O'Connell argued that he would be unfairly prejudiced by disclosure of the materials, in violation of his Sixth Amendment right to a fair trial, and that there was good cause for impoundment. Prescott argued in favor of lifting the order of impoundment, but expressed no objection to redacting the complainant's name and other identifying information from the affidavit. At the conclusion of the final hearing, the judge ruled that G. L. c. 41, § 97D, did not bar disclosure of the affidavit, that O'Connell and the Commonwealth had failed to demonstrate good cause for continued impoundment, and that a redacted version of the affidavit would therefore be released from impoundment.[7] The judge stayed his order for one week so that the parties would have an opportunity to file a petition in the county court.

The petitioners then filed a G. L. c. 211, § 3, petition in the county court. The single justice extended the stay of the judge's order until further order of the county court. Following a hearing, the single justice reserved and reported the case to this court.[8]

*Discussion.* Under our common law, judicial records are presumptively available to the public. *Commonwealth* v. *Silva*, 448 Mass. 701, 706-707 (2007). *Republican Co., supra* at 222. "[I]t

---

[7]The judge ordered that the redacted affidavit be "unsealed." Although "impoundment" and "sealing" are related concepts, and are often used interchangeably, the terms differ in meaningful respects. "Impoundment" refers to "the act of keeping some or all of the papers, documents, or exhibits, or portions thereof, in a case separate and unavailable for public inspection." Rule 1 of the Uniform Rules of Impoundment Procedure 901 (LexisNexis 2011-2012). "Consequently, an order of impoundment prevents the public, but not the parties, from gaining access to impounded material, unless otherwise ordered by the court." *Pixley* v. *Commonwealth*, 453 Mass. 827, 836 n.12 (2009). "A document is normally ordered 'sealed' when it is intended that only the court have access to the document, unless the court specifically orders limited disclosure." *Id.* Thus, although the judge ordered that the redacted affidavit be "unsealed," it is clear that he intended to order that the document be released from impoundment.

[8]According to O'Connell and the Commonwealth (collectively, petitioners), during the pendency of this petition, O'Connell was indicted by a grand jury, based on the allegations contained in the affidavit, and criminal proceedings were commenced in the Superior Court. Although the prosecution therefore will not proceed in the District Court, we agree with the petitioners that this appeal is not moot because Prescott still seeks access to the contested search warrant materials, which remain impounded by the District Court. See *New England Internet Café, supra* at 82 n.8.

is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley* v. *Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.). Materials filed with a court to support the issuance of a search warrant not only shed light on the functioning of law enforcement agencies, but also provide a means of understanding the court's decision to issue a warrant. Thus, we have repeatedly recognized that, when filed in court, search warrant materials are judicial records to which the public's presumptive right of access applies once the warrant has been returned. See, e.g., *Republican Co., supra* at 222-223; *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 631 (1988), cert. denied, 490 U.S. 1066 (1989) (*Newspapers of New England*).

The principle that search warrants are presumptively public has also been incorporated by legislative action. General Laws c. 276, § 2B, which governs the issuance and return of search warrants, provides that "[u]pon the return of [a] warrant, the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned." It is implicit in this provision that, "once the warrant and affidavit have been returned to the court, they become public documents." *Newspapers of New England, supra.*

Notwithstanding this presumption of public access, the public's right to view search warrant materials is not unlimited. Judges may restrict access to judicial records through impoundment where "good cause" is shown, an assessment that requires a careful "balanc[ing of] the rights of the parties based on the particular facts of each case." *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 604 (2000). See *Republican Co., supra* at 223. Impoundment is an exception to the general rule in favor of public access, however, and the scope of any impoundment order must therefore be limited to the requirements of the particular facts and circumstances. *New England Internet Café, LLC* v. *Clerk of the Superior Court for Criminal Business*, 462 Mass. 76, 85 (2012) (*New England Internet Café*).

Against this well-established tradition of public access,

embodied in both our statutory and decisional law, the petitioners advance two arguments to support their claim that the search warrant affidavit here should remain impounded. First, they contend that the Legislature modified the public's right of access to certain search warrant materials through its enactment of G. L. c. 41, § 97D, which requires police departments to maintain the confidentiality of reports they receive regarding rape or sexual assault. Second, the petitioners argue that good cause exists for continued impoundment of the entire affidavit, and that the judge erred in ordering that it be released in redacted form.

1. *Whether G. L. c. 41, § 97D, applies.* General Laws c. 41, § 97D (§ 97D), provides, in relevant part: "All reports of rape and sexual assault or attempts to commit such offenses and all conversations between police officers and victims of said offenses shall not be public reports and shall be maintained by the police departments in a manner which will assure their confidentiality."

We have not previously considered whether, by enacting § 97D, the Legislature intended, where a search warrant affidavit contains a report of rape or sexual assault, or conversations between police officers and the victim of such an offense, to alter the statutory and common-law presumption that a search warrant affidavit is available to the public once the warrant has been returned.[9] We interpret the statute according to well-settled principles of statutory construction. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline,* 435 Mass. 353, 360 (2001). "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and courts must interpret the statute so as to render the legislation effective, consonant with reason and common sense." *Cote-Whitacre* v. *Department of Pub. Health,* 446 Mass. 350, 358 (2006).

The petitioners claim that the Legislature intended § 97D to apply not only to police records containing reports of rape or

___

[9]We review a question of statutory interpretation de novo, without deference to the motion judge's conclusion. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison,* 456 Mass. 463, 467 (2010).

sexual assault, but also to court records, such as search warrant affidavits, that incorporate the same information. The petitioners suggest that this legislative intent may be discerned from the statute's general purpose, which they describe as protecting victims of sexual assault from public disclosure of intensely personal matters. They note that the affidavit at issue here contains near-verbatim recitations of the complainant's conversations with police, and that the Legislature could not have intended that the public have access to those conversations merely because police chose to investigate the allegations by applying for a search warrant. The petitioners suggest that the proper focus of our inquiry should be the content of a document rather than its physical form; they argue that § 97D prohibits, without exception, the public disclosure of information acquired by police through "reports" or "conversations" regarding rape or sexual assault, and that the prohibition applies even if such information is later incorporated into a search warrant affidavit or other document filed in court.

We are not persuaded by the petitioners' argument. On its face, § 97D does not apply to search warrant affidavits or other judicial records. By its plain terms, the statute is directed to communications received by police officers — "reports of rape and sexual assault" and "conversations between police officers and victims of said offenses" — and requires that such reports and conversations "shall be maintained by the police departments in a manner which will assure their confidentiality." Although the statute provides that these reports and conversations "shall not be public reports," it does not by its terms preclude publication in court of police reports or the content of a victim's conversations with police regarding an alleged rape or sexual assault. Such information is routinely disclosed publicly by police in the course of judicial proceedings.[10] See, e.g., *Commonwealth* v. *McCoy*, 456 Mass. 838, 845 (2010) (police officer testified at trial as first complaint witness regarding victim's report of rape); *Commonwealth* v. *Cowen*, 452 Mass. 757, 758-759 (2008) (police reports containing minor victims' detailed

---

[10]As we discuss *infra*, numerous statutes preclude disclosure or publication of a sexual assault victim's name or other identifying information, whether contained in police or court records.

accounts of rape submitted in evidence at trial to determine defendant's sexual dangerousness); *Commonwealth* v. *Adams*, 23 Mass. App. Ct. 534, 536 (1987) (police officer testified to details of minor victim's report of rape).

"[W]e do not interpret a statute to modify or abrogate an area traditionally guided by the common law, such as public access to judicial records, unless the intent to do so is clear." *Globe Newspaper Co., petitioner*, 461 Mass. 113, 118 (2011). In other instances, the Legislature's intent to limit access to certain judicial records or information has been manifested in explicit statutory language. See, e.g., G. L. c. 209A, § 8 (except by court order, court records in G. L. c. 209A actions involving minors "shall be withheld from public inspection," and plaintiff's address and telephone number "shall be confidential and withheld from public inspection"); G. L. c. 258E, § 10 (same, for actions brought under G. L. c. 258E); G. L. c. 265, § 24C ("portion of the records of a court or any police department . . . which contains the name of the victim in an arrest, investigation or complaint for rape or assault with intent to rape . . . shall be withheld from public inspection"). We presume that the Legislature is familiar with existing laws when enacting a new statute; had the Legislature intended § 97D to apply to search warrant affidavits or other judicial records, "it had ample opportunity to state so explicitly. It did not." *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 495 (1995), *S.C.*, 427 Mass. 603 (1998).[11]

Additionally, any construction of § 97D that would apply to judicial records would be at odds with the general principle that blanket prohibitions on public access to court records are to be avoided. See, e.g., *New England Internet Café, supra* at 85 (impoundment proceedings "must take shape around the facts

---

[11]We reject the petitioners' argument that our reading of G. L. c. 41, § 97D (§ 97D), will place prosecutors in "an impossible position" in which they must rely upon confidential reports in order to obtain search warrants but, by doing so, will "automatically" transform the reports into public documents. It is the police affidavit (or other document filed in court), not the confidential report, that becomes a judicial record and therefore presumptively public on the warrant's return. As a judicial record, the affidavit is subject to redaction pursuant to G. L. c. 265, § 24C, and may be impounded on a showing of good cause.

at hand and respond to the unique needs of the parties"); *Republican Co.*, *supra* at 223, quoting *Commonwealth* v. *Blondin*, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950) ("the power to deny public access to judicial records is to be 'strictly construed in favor of the general principle of publicity' "). As the petitioners acknowledge, § 97D is not limited only to specific information that may be included within a report or conversation about rape or sexual assault; it imposes a continuing obligation on police departments to maintain the entirety of those reports in a manner assuring their confidentiality. If applied to judicial records, such a requirement would have unacceptably far-reaching consequences. A wide range of court records in cases involving allegations of rape or sexual assault would be subject to mandatory and permanent impoundment, regardless of the specific facts or circumstances of each case. The United States Supreme Court has emphatically rejected blanket prohibitions on public access to judicial proceedings. See *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 611 (1982). We decline to interpret § 97D in such broad terms where a more limited construction, consistent with its text, is available. See *Manning* v. *Boston Redev. Auth.*, 400 Mass. 444, 453 (1987).

The expansive reach of § 97D urged by the petitioners also is not supported by the context in which the statute was enacted. The Legislature enacted § 97D through St. 1974, c. 581, inserting G. L. c. 41, §§ 97B-97D, entitled "An act establishing a method of reporting and prosecuting the crime of rape and counselling of victims of rape" (act). These provisions establish a police unit for investigating and prosecuting rape; require a special telephone line through which that unit may receive reports of rape; and require that those reports remain confidential. The act also provided for training of members of rape prevention and prosecution units in police departments. See G. L. c. 6, §§ 118, 156.

In enacting these provisions, the Legislature appeared to be concerned with aspects of the internal proceedings and records of police departments. The act makes no reference to court documents, nor does it otherwise support an inference that the Legislature intended the mandate of confidentiality in § 97D to reach beyond reports in the possession of police departments.

We therefore conclude that § 97D has no bearing on the public's access to search warrant affidavits that have been filed in court.[12]

2. *Whether there is good cause for impoundment.* The petitioners next argue that, even if § 97D is not interpreted to mandate permanent confidentiality of the search warrant affidavit, the judge nevertheless erred in determining that there was no good cause to continue the order of impoundment. "We review orders concerning impoundment for abuse of discretion or other error of law." *New England Internet Café, supra* at 83. Our inquiry is limited to the record as it existed "at the time the order was issued." *Newspapers of New England, supra* at 629.

As noted, the public's right of access to judicial records may be restricted only on a showing of "good cause." *Republican Co., supra* at 223. To determine whether good cause exists, "judges must carefully 'balance the rights of the parties based on the particular facts of each case,' 'take into account all relevant facts,' and 'tailor the scope of the impoundment order so that it does not exceed the need for impoundment.' " *New England Internet Café, supra* at 91, quoting *Boston Herald, Inc.* v. *Sharpe,* 432 Mass. 593, 604 & n.22, 605 (2000). Relevant factors to be considered in balancing the parties' rights include, but are not limited to, "the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request." *Boston Herald, Inc.* v. *Sharpe, supra* at 604 n.22, quoting Rule 7 of the Uniform Rules on Impoundment Procedure (West 2000).[13] An impoundment order "carries no continuing presumption of

---

[12]Our reference to § 97D in *Montefusco* v. *Commonwealth,* 452 Mass. 1015, 1016 (2008), a case on which the petitioners rely, is not to the contrary. There, a defendant who had been convicted of rape sought postconviction discovery of the prosecutor's case file. We held that the prosecutor had no obligation under the public records law, G. L. c. 66, § 10, to disclose those files "because materials relating to an allegation of sexual assault are exempt from [the public records] law." *Id.,* citing § 97D. The matter before us does not involve a request under the public records law. Indeed, we have long held that judicial records are not within the scope of that statute. See *Kettenbach* v. *Board of Bar Overseers,* 448 Mass. 1019, 1020 (2007), and cases cited. Regardless whether § 97D may apply to a prosecutor's case files, the statute has no bearing on the public's right to access judicial records, such as those at issue here.

[13]Although the Uniform Rules on Impoundment Procedure expressly apply only in civil cases, "we have indicated that the uniform rules are highly

validity to sustain it against a proper challenge subsequently brought." *Republican Co., supra* at 224. "The burden of demonstrating the existence of good cause always remains with the party urging [the] continued impoundment [of court records]." *Id.* at 225.

In the context of a criminal proceeding, the public's right of access, whether derived from the United States Constitution or common law, must be balanced against the defendant's constitutional right to a fair trial. *Newspapers of New England, supra* at 632. In balancing these rights, a court may consider "whether the information has already been disclosed, the nature of the documents under impoundment, or whether there are alternatives to withholding public access, such as change of venue." *Boston Herald, Inc.* v. *Sharpe, supra* at 608. "Protecting a defendant's right to a fair trial is undeniably a substantial government interest." *Newspapers of New England, supra,* citing *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508 (1984) ("No right ranks higher than the right of the accused to a fair trial"). "[T]rial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard* v. *Maxwell,* 384 U.S. 333, 362 (1966).

Here, the judge determined that the petitioners did not satisfy their burden of establishing good cause to continue the order of impoundment. The petitioners claim that the judge's decision was erroneous because he failed to consider all of the relevant factors. They argue that the judge impermissibly based his decision on a generalized notion of "public interest," and improperly concluded that O'Connell would not be prejudiced by release of the affidavit because "courts have always found that there is a way to ensure a fair trial." The petitioners observe that a "defendant's constitutional right to a fair trial is paramount." Therefore, they argue, a defendant's interest in seeking impoundment necessarily trumps the broad concept of public interest, and the judge

---

instructive" in criminal proceedings. *Republican Co., supra* at 227 n.14. While we have not determined that the uniform rules are binding in criminal cases, we have emphasized that "[p]ractice regarding orders of impoundment entered in criminal proceedings should hew as closely as possible to the protocol described by the uniform rules." *Id.* See *New England Internet Café, supra* at 86 n.9.

erred as a matter of law in striking the balance in favor of public access.

We disagree. If we were to accept the petitioners' assertion, "much about the world of crime and the operation of the criminal justice system would be withdrawn from public view." *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324, 330 (4th Cir.), cert. denied sub nom. *Hughes* v. *Washington Post Co.*, 500 U.S. 944 (1991). By engaging in the proper balancing of interests, and utilizing the procedural tools available in criminal proceedings, judges are well equipped to safeguard a defendant's right to a fair trial. See, e.g., *Boston Herald, Inc.* v. *Sharpe, supra* at 611 (change of venue, individual voir dire, and thorough instructions to jury can ensure fairness and impartiality).

There will undoubtedly be circumstances where the prejudicial nature of certain information, in combination with the type of community from which prospective jurors will be drawn or the stage of the criminal proceedings at which the information is released, will make it difficult or impossible to eradicate prejudicial publicity from the minds of prospective jurors. See, e.g., *Newspapers of New England, supra* at 633-634 (affirming judge's decision to impound search warrant affidavit). Cf. *Commonwealth* v. *Toolan*, 460 Mass. 452, 468-470 (2011) (new trial ordered where judge did not conduct adequate individual voir dire of jurors, which was essential to ensuring fair trial in small, nonurban community where potential jurors had been exposed to extensive media coverage that was prejudicial to defendant's anticipated theory of defense). A judge may not disregard potential prejudice to the defendant based on a generalized belief that it can be remedied later by corrective measures at trial. Rather, the judge must determine in the first instance whether procedural tools other than impoundment (such as probing voir dire, thorough jury instructions, change in venue, and cross-examination) will sufficiently safeguard the defendant's constitutional right to a fair trial. See, e.g., *Commonwealth* v. *Gaynor*, 443 Mass. 245, 258-259 (2005) (trial judge appropriately exercised discretion to transfer case to another county on basis of prejudicial pretrial publicity).

The judge's comment that "courts have always" found ways to ensure a fair trial when information is released from impound-

ment was isolated, and not an accurate reflection of his over-all careful consideration of the issues. The judge applied the correct legal standard and thoughtfully weighed the appropriate factors. He conducted extensive hearings, on three separate dates. The judge recognized that the affidavit contained information of public interest and concern, but recognized also that the affidavit implicated the complainant's right to privacy and O'Connell's right to a fair trial. He ensured the complainant's privacy by redacting her name and other identifying information from the affidavit.

The judge questioned counsel extensively in an effort to determine how the information in the affidavit might prevent O'Connell from receiving a fair trial. See *Newspapers of New England, supra* at 639 (Wilkins, J., concurring) ("The motion judge had to support [the decision to impound] by showing what facts would be unfairly prejudicial and how the criminal defendant's rights could not be reasonably protected other than by impoundment"). He was not required to adopt O'Connell's claims, based on his conclusory assertions of prejudice, that pretrial publicity would prevent him from receiving a fair trial. See *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 15 (1986) ("conclusory assertion that publicity might deprive the defendant" of right to fair trial cannot overcome public's right of access to judicial proceedings). The judge observed that, unlike the situation in *Newspapers of New England, supra* at 633, O'Connell's trial would take place in a suburban community adjoining the city of Boston,[14] rather than in a small rural community. There was no abuse of discretion in ordering that a redacted version of the affidavit be released.[15]

*Conclusion.* The case is remanded to the county court. The

---

[14]At the time of the hearing, O'Connell had not yet been indicted, and the trial would have taken place in the Quincy Division of the District Court Department. As stated, our inquiry is limited to the record as it existed "at the time the order was issued." *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 629 (1988), cert. denied, 490 U.S. 1066 (1989).

[15]Although Prescott initially sought access to all of the search warrant materials, including the warrant and warrant return, the judge's focus at the hearing was the affidavit. In his order, the judge expressly released from impoundment only the redacted affidavit; he did not indicate whether the other documents would also be released from impoundment. The petitioners

single justice is directed to vacate the order staying release of the redacted affidavit and to affirm the District Court judge's order vacating the order of impoundment and releasing a redacted version of the affidavit.

*So ordered.*

---

have made reference to the other materials, but, because those documents were not included in the record before us, we express no opinion on their continued impoundment.