NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11939

COMMONWEALTH  vs.  PHILIP CHISM & others.[1]

Suffolk.     September 7, 2016. - January 4, 2017.

Present:  Gants, C.J., Botsford, Hines, Gaziano, & Budd, JJ.

Impoundment.  Fair Trial.  Evidence, Videotape.  Public Records.
    Constitutional Law, Impoundment order, Fair trial.
    Practice, Criminal, Impoundment order, Motion to suppress,
    Record, Fair trial.  Uniform Rules on Impoundment
    Procedure.

    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on February 6, 2015.

    The case was heard by Duffly, J.


    Jonathan M. Albano (Emma D. Hall with him) for Boston Globe
Media Partners, LLC.
    Patrick Levin, Committee for Public Counsel Services, for
the defendant.
    Zachary C. Kleinsasser, for Eagle Tribune Publishing
Company, Inc., was present but did not argue.


    GANTS, C.J.  The issue on appeal is whether a Superior

Court judge committed an error of law or abused his discretion

---

[1] Boston Globe Media Partners, LLC, and Eagle Tribune
Publishing Company, Inc., interveners.

in denying a defendant's motion to impound a video recording and transcript of a police interview with the defendant that was the subject of a motion to suppress and that was subsequently suppressed. We conclude that the judge applied the correct legal standard in deciding that motion. We also conclude that, where the judge considered both the presumption of public access to judicial records and the defendant's right to a trial decided by a fair and impartial jury, and where he subsequently forbade the duplication of the video recording and transcript, the judge did not abuse his discretion in denying the motion.

Background. In the early evening of October 22, 2013, the defendant's mother informed the Danvers police department that the defendant, who was fourteen years old at the time, was missing. Shortly after midnight on October 23, a Danvers police officer located the defendant walking on a road in Topsfield and transported him to the Topsfield police station, where the backpack he had been carrying was inventoried and he was briefly questioned by the police. The defendant was then transported to the Danvers police station, where, in the presence of his mother, he was interviewed at approximately 2:30 A.M. by a State trooper and a Danvers police sergeant. The entire interview was video recorded. During this interview, the defendant admitted that he had killed Colleen Ritzer (victim), a teacher at Danvers

High School, and described the killing and the removal of her body from the school bathroom where she was killed.

A grand jury returned indictments in November, 2013, charging the defendant, among other crimes, with murder in the first degree. In December, 2014, the defendant filed a motion to suppress the statements he made at the Topsfield and Danvers police stations, claiming, among other grounds, that the defendant did not knowingly and intelligently waive the Miranda rights and that the statements were not made voluntarily. On January 5, 2015, the defendant filed a motion to impound "the contents of the videotaped interrogation of the juvenile and the transcript of that interview, should either or both be entered into evidence as exhibits in the course of the hearing on the motion to suppress." The third-party interveners, Boston Globe Media Partners, LLC (publisher of the Boston Globe), and Eagle Tribune Publishing Company (publisher of the Salem News and the Eagle Tribune), opposed the motion to impound.

After two of the four days of hearings on the motion to suppress, the judge heard argument on the motion to impound on January 20 and 21, 2015. At this time, the videotape recording of the defendant's interview at the Danvers police station had been admitted in evidence at the suppression hearing and the transcript of that interview had been marked for identification, but the recording had not been played in open court and neither

the recording nor the transcript had been made publicly available. The judge orally denied the motion to impound from the bench, and issued a written memorandum of decision and order on January 23, 2015.

The judge recognized that the exhibits the defendant moved to impound, having been entered in evidence at the suppression hearing, are judicial records. Quoting Commonwealth v. George W. Prescott Publ. Co., 463 Mass. 258, 262 (2012), and The Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004), he noted that judicial records "are presumptively available to the public" under the "common-law right of access to judicial records." The judge declared that the public's right to understand his decision on the defendant's motion to suppress statements, a decision he had not yet made, "is of constitutional dimension." Because the voluntariness of the statements was at issue and the defendant's statements "are probative concerning the issue of voluntariness," the judge found that his decision "will inevitably involve an in-depth discussion of the statements the defendant seeks to suppress."[2] The judge declared:

---

[2] In his findings of fact and rulings of law on the defendant's motion to suppress, issued in March, 2015, the judge stated that he had "assiduously reviewed the video [recording] of the defendant's statement on numerous occasions." The judge allowed the motion in part and denied it in part. He allowed

>"[I]f the motion to impound were allowed, the court would be left with two unsatisfactory options:  the court could hear argument on the important issue of whether the Commonwealth has met its burden of proving voluntariness beyond a reasonable doubt at side-bar and impound the record of that portion of the argument; alternatively, the court would be forced to speak in such cryptic terms that it would impair a robust discussion and leave the public distrustful of the process."

The judge also predicted that, regardless of his ruling on the motion to suppress (and, implicitly, his ruling on the motion to impound), the substance of the defendant's recorded statements during the videotaped interview would likely become public prior to empanelment.[3]

The judge recognized that release of the video recording and transcript "necessarily involves divulging inflammatory content" and would make the selection of a fair and impartial jury "more challenging."  However, the judge found that,

---

that part of the motion that sought to suppress the defendant's statements at the Danvers police station.

[3] In fact, some of the admissions made by the defendant during the recorded interview at the Danvers police station were already public at the time of the judge's ruling.  In January, 2014, a State trooper executed an affidavit in support of a warrant to search a cellular telephone that purportedly belonged to the defendant.  In that affidavit, the trooper stated that, during the interview, the defendant admitted to the murder of the victim, claimed that he struck her once and cut her twice, denied sexually assaulting her, said that he destroyed his cellular telephone and hers to prevent the police from using the telephones to track his location, and declared that he threw both telephones into a wooded area, whose location he identified.  There is nothing in the record to suggest that this affidavit was impounded.  A staff writer with the Salem News indicated in an article dated April 8, 2014, that she had read the affidavit.

"[g]iven the size of the community, there is no concern that pretrial publicity, even if pervasive, would inevitably lead to a tainted jury or an unfair trial."  He added that he was "confident" that an indifferent jury could be selected, and that he was "equipped to ensure [that] the defendant's . . . right to a fair trial [under the Sixth Amendment to the United States Constitution] is preserved and [to] minimize any prejudicial impact on the defendant."

The judge granted the defendant's motion to stay the order and barred release of the videotape and transcript to allow time for the defendant to appeal.  On January 26, 2015, the defendant applied for interlocutory relief from a single justice of the Appeals Court pursuant to Rule 12 of the Uniform Rules of Impoundment Procedure, seeking review of the judge's denial of the motion to impound, claiming that the judge "abused his discretion and committed an error of law in concluding that 'good cause' does not exist for the requested impoundment."  See The Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 601-603 (2000) (Sharpe) (setting forth procedure for appealing under Uniform Rules of Impoundment Procedure to Appeals Court and Supreme Judicial Court).  On February 5, the single justice denied the defendant's request for interlocutory relief, concluding that the judge did not abuse his discretion and "carefully balanced the defendant's interest in a fair trial and

the public's common-law and Constitutional right to access court proceedings."  The single justice also extended the duration of the stay to February 6.

On that date, the defendant filed a petition for relief under G. L. c. 211, § 3, asking a single justice of the Supreme Judicial Court for Suffolk County to reverse the order of the single justice of the Appeals Court, again claiming that the judge abused his discretion and committed an error of law in concluding that there was not "good cause" for the requested impoundment.  In July, 2015, the single justice allowed the petition for relief, concluding that neither the single justice of the Appeals Court nor the motion judge "appear[ed] to have considered the appropriate factors in balancing the [defendant's] right to a fair trial before an impartial jury under the Sixth Amendment . . . and the [interveners'] rights of access, either under the First Amendment to the United States Constitution or at common law."  The single justice therefore vacated the denial of the motion to impound and remanded the matter to the Superior Court for reconsideration in light of "the appropriate factors."  See Sharpe, 432 Mass. at 602 (focus of single justice's review of petition filed pursuant to impoundment rules "should be on whether the single justice of the Appeals Court erred, [but] the resolution of the inquiry

might require [looking] indirectly at the underlying order of the judge").

The single justice of the county court essentially concluded that the single justice of the Appeals Court and the motion judge committed two legal errors. First, she concluded they erred by applying the First Amendment strict scrutiny standard applicable to the closing of a court room to the public rather than the good cause standard applicable to the impoundment of court records. Second, she concluded that they erred by failing to consider "whether the documents sought to be impounded were indeed public records, subject to a presumptive common[-]law right of access." She declared that "[b]ecause the documents have been suppressed, there is scant, if any, basis to conclude that there is any public right of access to them." The single justice quoted the assertion in United States v. McVeigh, 119 F.3d 806, 813 (10th Cir. 1997), cert. denied sub nom. Dallas Morning News v. United States, 522 U.S. 1142 (1998), that "the right of access to suppression hearings and accompanying motions does not extend to the evidence actually ruled inadmissible in such a hearing." She also concluded that, apart from these legal errors, the single justice and the motion judge abused their discretion by not properly weighing the qualified public right of access to the video recording and transcript "against the 'paramount' right of the [defendant] to a fair trial before

an impartial jury." Regarding the risk of prejudicial pretrial publicity, she declared that release of a transcript of the almost two-hour confession, "even without release of the even more inflammatory [video recording]," posed "a high risk" of creating "deep and bitter prejudice throughout the community." The single justice also stated that, because of the risk of publication and comment on the Internet and social media, release of the defendant's statement would result in "global" exposure to "such a spectacle."

The single justice directed that, on remand, a judge of the Superior Court should consider whether the defendant's right to a fair trial "could be achieved if the statements were released, or whether the extent of potential prejudice to the jury pool would preclude the [defendant] from obtaining a fair trial." The interveners appealed from the single justice's decision to the full court. As a consequence of the appeal, the matter was not remanded and, during the pendency of this appeal, the defendant was convicted by a Superior Court jury of murder in the first degree and other charges.

Discussion. Before commencing our review of the decision of the single justice of the county court, it is important to recognize with some precision the issue before us, given the context of this appeal. On January 26, 2015, the same date that the defendant sought interlocutory review of the judge's denial

of the motion to impound by the single justice of the Appeals Court, the defendant moved in the Superior Court for an order prohibiting the duplication of the video recording and transcript of the Danvers police station interview.  The judge allowed the motion without hearing, noting that, if the order denying impoundment were no longer stayed, he would promptly schedule a hearing on the issue of duplication.  Because that order was stayed and later vacated, no such hearing has been held on the issue of duplication, and the judge's order forbidding duplication remains in effect.  The interveners have not appealed from that order.  Therefore, the issue before us is solely whether the public may come to the Superior Court clerk's office in Essex County to see and hear the videotaped recording and read the transcript, not whether the public may make a copy of the recording or the transcript so that they may be viewed outside the clerk's office.

Moreover, because this is an appeal from the decision of the single justice of the county court under G. L. c. 211, § 3, we must decide whether the single justice committed an error of law or abused her discretion in concluding that the single justice of the Appeals Court committed an error of law and abused his discretion in affirming the judge's denial of the motion to impound.  See Sharpe, 432 Mass. at 602; Department of Mental Retardation v. Kendrew, 418 Mass. 50, 53 (1994).  We

begin with the determination by the single justice of the county court that the single justice of the Appeals Court and the motion judge erred regarding the legal standard to apply to a motion to impound under these circumstances.  We consider later the determination that they committed an abuse of discretion in weighing the appropriate factors.

1.  Legal standard.  Under the First Amendment, the public has the right to attend a pretrial hearing regarding a motion to suppress unless the party seeking closure of the hearing to the public satisfies the four-part strict scrutiny test articulated in Waller v. Georgia, 467 U.S. 39, 48 (1984):  "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."  See Commonwealth v. Jones, 472 Mass. 707, 723 (2015) (rape shield hearing may not be closed to public unless Waller test is met).  Here, no party sought closure of the motion to suppress hearing.  Therefore, once the videotaped recording of the defendant's interview at the Danvers police station was admitted in evidence, if any party had sought to play the recording in open court so that it could be seen and heard by the judge or a witness, all those present in the court

room would have seen and heard the interview.  But no party sought to play the recording in open court; the judge instead carefully reviewed outside the court room the recording and the accompanying transcript in reaching his decision regarding the motion to suppress.

A recording admitted in evidence as an exhibit at a motion to suppress hearing, and a transcript of that recording marked for identification, are judicial records.  See New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County, 462 Mass. 76, 82-83 (2012) (judicial records include "transcripts [and] evidence").  We have long recognized a common-law presumption of public access to judicial records.  See Commonwealth v. Pon, 469 Mass. 296, 311 (2014); Commonwealth v. Winfield, 464 Mass. 672, 678 (2013).  See also Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents").  The presumption of public access encourages openness, transparency, and an informed public while discouraging misconduct, bias, and dishonesty, all of which enhances public confidence in the judicial system.  Winfield, supra, quoting Sharpe, 432 Mass. at 606 ("This presumption of public access to judicial records allows the public and the media to develop a full understanding of a judicial proceeding

so that they may 'keep a watchful eye' on the judicial system");
The Republican Co., 442 Mass. at 222.

But a defendant also is entitled to a fair trial, and a
judge must protect against the risk that pretrial publicity will
be so pervasive and prejudicial that it poses an unacceptable
risk of preventing the selection of a fair and impartial jury or
of influencing the verdict, especially where the pretrial
publicity would reveal information that will not be admitted in
evidence at trial.  See Sharpe, 432 Mass. at 608-609; Newspapers
of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the
Dist. Court Dep't, 403 Mass. 628, 632 (1988), cert. denied, 490
U.S. 1066 (1989).  See also Commonwealth v. Toolan, 460 Mass.
452, 462-463 (2011).  "When the rights of the accused and those
of the public come irreconcilably into conflict, the accused's
Sixth Amendment right to a fair trial must . . . take precedence
over the public's First Amendment right of access to pretrial
proceedings."  Sharpe, 432 Mass. at 609 n.28, quoting In re
Globe Newspaper Co., 729 F.2d 47, 53 (1st Cir. 1984).  However,
we also recognize that "pretrial publicity -- even pervasive,
adverse publicity -- does not inevitably lead to an unfair
trial."  See Toolan, 460 Mass. at 463, quoting Skilling v.
United States, 561 U.S. 358, 384 (2010).

We balance the competing interests of public access and the
right to a fair trial by making the common-law presumption of

public access rebuttable for "good cause shown."  See Winfield, 464 Mass. at 678, quoting Globe Newspaper Co., petitioner, 461 Mass. 113, 120 (2011).  The Uniform Rules on Impoundment Procedure apply to all "public case records that are filed in civil and criminal proceedings in each Department of the Trial Court."  Rule 1(a).  Under Rule 7(b), "[i]n determining good cause, the court shall consider all relevant factors, including, but not limited to, (i) the nature of the parties and the controversy, (ii) the type of information and the privacy interests involved, (iii) the extent of community interest, (iv) constitutional rights, and (v) the reason(s) for the request." See Sharpe, 432 Mass. at 608 ("In balancing the public's right to inspect documents against a defendant's rights guaranteed by the Sixth Amendment to a fair trial, a court may consider . . . whether the information has already been disclosed, the nature of the documents under impoundment, or whether there are alternatives to withholding public access, such as a change of venue").[4]

The judge here correctly recognized that the video recording of the defendant's interview at the Danvers police station and the transcript of that interview became judicial

---

[4] An order of impoundment "may be entered only upon a written finding of good cause," and "shall specify the duration of the order."  Rule 8 of the Uniform Rules on Impoundment Procedure.

records once the recording was admitted in evidence at the suppression hearing and the transcript was marked for identification.  The judge also correctly recognized that, in evaluating whether good cause for impoundment had been shown, it was appropriate to consider that the public was entitled to evaluate his decision regarding the motion to suppress and the police conduct at issue in the motion, and that the content of the defendant's interrogation would be important to any such evaluation.  The judge also correctly recognized that one of the grounds raised by the defendant in the motion to suppress was that the statements at the Danvers police station were made involuntarily, and that the videotape recording of the interview would be probative on this issue because it would reveal not only what the defendant said but also the conduct and demeanor of the defendant and his interrogators.

We do not agree with the single justice of the county court's conclusion that the judge incorrectly applied the constitutional test appropriate to the closure of a court room to the motion to impound the video recording.[5]  We recognize that

---

[5] Nor do we agree with the single justice of the county court that the Superior Court judge concluded that there was a First Amendment right of access to an impoundment hearing.  The judge did not need to reach this issue because there was no motion to close that hearing to the public and that constitutional issue was not relevant to whether there was good cause to impound the exhibits at issue.

the judge stated that he denied the defendant's motion to impound "[a]fter balancing the defendant's Sixth Amendment right to a fair trial with the public's First Amendment right to view the criminal proceedings," which, if considered in isolation, would suggest that he applied a strict scrutiny test to the defendant's motion.  But, after examining the totality of his decision, we are persuaded that he applied the good cause test, not the strict scrutiny test.  In making both his oral and written ruling on the motion to impound, the judge began by quoting the good cause standard in Rule 7(b) of the Uniform Rules on Impoundment Procedure.  We also note that, in the appeals to both single justices, the defendant appeared to acknowledge that the judge had applied the good cause standard, because he contended that the judge had abused his discretion in applying the good cause standard.[6]

---

[6] Because all parties acknowledge that good cause is the appropriate standard to apply to a motion to impound judicial records, we need not here decide whether the presumption of public access to the judicial records at issue is a constitutional, as well as a common-law, right.  Compare Matter of N.Y. Times Co., 828 F.2d 110, 114 (2d Cir. 1987), cert. denied, 485 U.S. 977 (1988) (qualified First Amendment right of access extends to written documents submitted in connection with judicial proceedings for which there is right of access), with United States v. Corbitt, 879 F.2d 224, 237 (7th Cir. 1989) (document is subject to right of access under First Amendment only where judge considers whether "the document has historically been available to the public, and whether public access would promote the proper functioning of the government

Nor do we agree with the suggestion of the single justice of the county court, citing McVeigh, 119 F.3d at 813, that the video recording and transcript were not judicial records and therefore not presumptively public because they would be inadmissible in evidence at trial if the motion to suppress were granted, as it later was with respect to the defendant's interview at the Danvers police station. We agree that evidence does not become a judicial record simply because a defendant seeks to suppress that evidence. See United States v. Gurney, 558 F.2d 1202, 1210 (5th Cir. 1977), cert. denied sub nom. Miami

---

agency producing or considering the document"). It suffices that we recognize that, even if access to judicial records were within the rubric of the constitutional right to a public trial, that would not necessarily mean that the appropriate standard to apply to a motion to impound was the four-part strict scrutiny test articulated in Waller v. Georgia, 467 U.S. 39, 48 (1984), that must be applied when a party seeks closure of the courtroom to the public. See Commonwealth v. Pon, 469 Mass. 296, 311 (2014) ("We conclude that the records of closed criminal cases resulting in these particular dispositions are not subject to a First Amendment presumption of access, and therefore that the sealing of a record under G. L. c. 276, § 100C, need not survive strict scrutiny"). Our constitutional jurisprudence recognizes that context matters in the standard to be applied to safeguard a constitutional right. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures," but we apply a probable cause standard to the search of a person and a reasonable articulable suspicion standard to the temporary seizure of a person during a police stop. See Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011); Commonwealth v. Bostock, 450 Mass. 616, 619 (2008).

Herald Publ. Co. v. Krentzman, 435 U.S. 968 (1978) ("The press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain"). Therefore, where a defendant seeks to suppress a diary found during the search of his home based on the absence of probable cause, the diary does not become a judicial record simply because its suppression is the subject of the motion. But where a defendant's statements are the subject of the suppression motion and a recording of those statements is admitted in evidence at the suppression hearing because it is relevant to the issue whether the motion should be allowed, the fact that the recording might be suppressed and therefore be inadmissible at trial does not change the fact that it was admitted in evidence at the suppression hearing and thereby became a judicial record. To be sure, the fact that the recording might be inadmissible at trial is a relevant factor to consider in deciding whether it should be impounded for good cause shown, because of the risk that widespread publicity regarding the inadmissible recording might taint the prospective jury pool and put at risk the defendant's right to a trial decided by a fair and impartial jury. But, where a recording is admitted at trial in a pretrial suppression hearing, its ultimate inadmissibility at trial does not remove it from the category of a judicial record. Nor was it inappropriate for the

judge to rule on the motion to impound before the judge had ruled on the motion to suppress because, once the video recording was admitted in evidence at the suppression hearing, it became a judicial record that was presumptively public unless impounded.

Increasingly, perhaps spurred by the recognition of the "many benefits that flow from recording of interrogations," Commonwealth v. DiGiambattista, 442 Mass. 423, 441 (2004), and our directive that "a defendant whose interrogation has not been reliably preserved by means of a complete electronic recording should be entitled, on request, to a cautionary instruction concerning the use of such evidence," id. at 447, an increasing number of police departments in the Commonwealth are video recording police interrogations of suspects. See National Association of Criminal Defense Lawyers, Custodial Interrogation Recording Compendium By State: Massachusetts (January 13, 2016), https://www.nacdl.org/usmap/crim/30262/48121/d# [https://perma.cc/Y8GR-B85H]. As a result, we have seen an increasing number of cases where the evidentiary hearing on the motion to suppress a defendant's statements consists of nothing more than the Commonwealth offering in evidence the waiver of rights forms, the video recording of the interrogation, and a transcript of the interrogation, which the judge then reviews in deciding whether the defendant knowingly and voluntarily waived

his or her rights and whether the statements were made involuntarily. See, e.g., Commonwealth v. Hoyt, 461 Mass. 143, 148 (2011) (at evidentiary hearing on motion to suppress, judge "considered only documentary evidence:  the Miranda waiver form, the interrogation video recording, and the transcript of the interrogation").  If the video recording were not a judicial record, the public would have no way in these cases apart from the judge's memorandum of decision to evaluate the judge's decision to suppress.

2.  Abuse of discretion.  Having concluded that the judge did not commit legal error in considering the defendant's motion to impound under the good cause standard applicable to presumptively public judicial records, we now turn to the defendant's claim that the judge abused his discretion in applying that standard.  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

The judge was cognizant of the risk that he might suppress the statements made during the video recorded interview at issue in the motion to impound, that release of the video recording

and the transcript "necessarily involves divulging inflammatory content," and that such disclosure "will mean that the selection of a fair and impartial jury will be more challenging."  But he also recognized that the substance of the interview, at least in part, would be disclosed during the attorneys' oral argument regarding the motion to suppress and in his decision regarding that motion because the voluntariness of the statements was at issue and the defendant's statements "are probative concerning the issue of voluntariness."  Therefore, even if the video recording and transcript were impounded, the public was likely to learn many of the details of the defendant's statements in the impounded recording, including his admission to having killed the victim.  See Sharpe, 432 Mass. at 608 (in balancing public's right to inspect judicial records and defendant's right to fair trial, judge may consider "whether the information has already been disclosed").[7]

The judge also recognized that careful individual voir dire of the venire and explicit jury instructions would be needed to ensure the selection of a fair and impartial jury, and that, if such a jury could not reasonably be selected in Essex County, he

---

[7] As noted earlier, see note 3, supra, details regarding the content of the defendant's statement to police during his interview at the Danvers police station were also included in the search warrant affidavit of a State trooper that had not been impounded.  The record does not reflect whether the judge was aware of this judicial record.

had the discretion to order a change of venue.  Knowing this, the judge declared that, "[g]iven the size of the community, there is no concern that pretrial publicity, even if pervasive, would inevitably lead to a tainted jury pool or an unfair trial."  We recognize that "[p]ublicity concerning the proceedings at a pretrial hearing . . . could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial."  Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 14 (1986), quoting Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979).  But we give substantial deference to the conclusion of an experienced trial judge who is familiar with the case and the pretrial publicity that has surrounded it regarding the likelihood that revelation of a defendant's confession to the police, even a confession that might be suppressed and therefore inadmissible in evidence at trial, would so taint the jury venire as to unfairly burden the defendant's right to a fair trial.  See Commonwealth v. McCowen, 458 Mass. 461, 476 (2010) ("we give careful attention to the evaluation of the trial judge, especially one who, as here, presides in the county where the crime occurred and is familiar with the nature and pervasiveness of the pretrial publicity"); Commonwealth v. Clemente, 452 Mass. 295, 325 (2008), cert. denied, 555 U.S. 1181 (2009) ("we have granted trial judges 'wide discretion' in

dealing with publicity that might have a prejudicial effect on jurors" [citation omitted]).

The question whether the judge abused his discretion in denying the motion to impound would have been closer had the judge not allowed the defendant's motion to prohibit duplication of the video recording.  We recognize that, when the judge denied the motion to impound, he did not impose this prohibition; the prohibition against copying was ordered sixteen days after the oral denial of the motion to impound, in response to the defendant's motion seeking such an order.  As a result, had the denial stood alone and not been stayed, a member of the public or the media might have obtained access to the video recording for both inspection and copying.[8]

---

[8] Under the new Uniform Rules on Public Access to Court Records, Trial Court Rule XIV (2016), "[a]ny member of the public may submit to the Clerk at a courthouse a request to access a court record."  Rule 2(b).  "Access" is defined as "the ability to inspect and obtain a copy of a court record."  Rule 1(e).  A "court record" includes court papers, documents, exhibits, and recordings that are "made, entered, filed, and/or maintained by the Clerk in connection with a case or proceeding."  Id.  A clerk, with leave of court, "may allow the public to view and photograph non-documentary exhibits, except where such access would pose a threat of deterioration, contamination, or destruction of the exhibits."  Rule 2(e). Even though these Uniform Rules did not become effective until November 1, 2016, we understand that they reflect current practice regarding the inspection and copying of court records. See Memorandum from the Trial Court Comm. on Pub. Access to Court Records to Persons Interested in the Proposed Trial Court Rule XIV Uniform Rules on Access to Court Records (March 30, 2016), http://www.mass.gov/courts/docs/sjc/invitations-to-

We also recognize that the danger of prejudicial pretrial publicity is substantially greater where a defendant's pretrial interrogation can be seen and heard on public and social media in an already highly publicized case, especially where that interrogation is suppressed and would not otherwise be seen and heard by the jury, and where the defendant admits during that interrogation to killing the victim.  See Rideau v. Louisiana, 373 U.S. 723, 726 (1963) ("it was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of [the defendant] personally confessing in detail to the crimes for which he was later to be charged").  Media reports describing the interrogation or even quoting the transcript of the interrogation pose a considerable but lesser danger.  See United States v. Mohamed, 546 F. Supp. 2d 1299, 1302 (M.D. Fla. 2008) (forbidding duplication of video recording of traffic stop admitted in evidence at motion to suppress because "release and broadcast of [video recordings] may have more of an inflammatory impact on the viewing public than a mere recounting of the testimony and evidence presented at the suppression hearing"); In re NBC Universal, Inc., 426 F. Supp. 2d 49, 58 (E.D.N.Y. 2006) (forbidding duplication of video

_____

comment/proposed-public-access-rules-comparison-document.pdf [https://perma.cc/6TCF-S7JR].

recording admitted in evidence at motion to disqualify defense counsel because "[t]elevision indubitably has a much greater potential impact on jurors than print media").

However, by the time the denial of the motion to impound reached the appellate courts, the judge had issued the order prohibiting the duplication of the video recording and transcript, and the appellate review for abuse of discretion should properly have considered whether the denial of the motion to impound was an abuse of discretion in light of the subsequent order to prohibit duplication.  We conclude here that the judge, having subsequently ordered that the video recording could not be duplicated, did not abuse his discretion in denying the motion to impound.[9]

We note that what the judge ultimately did here was comparable to what he had the authority to do if one of the parties had chosen to play the video recording in open court at the suppression hearing.  In such a circumstance, a judge has

_____

[9] Because the public presumptively has access to a judicial record, and because that access generally means that the judicial record may be inspected and copied, an order prohibiting the duplication of a judicial record is a variant of an order of impoundment, which requires a showing of good cause, albeit a good cause showing consistent with the lesser intrusion on public access.  The practical consequence of such an order is that it requires a clerk's office to identify a third category of judicial records -- a public record that is not impounded, but may not be duplicated -- beyond the two categories with which it is more familiar:  (1) a public record that may be inspected and copied, and (2) an impounded record that must be kept separate and unavailable for public inspection.

the authority under Supreme Judicial Court Rule 1:19, as appearing in 461 Mass. 1301 (2012), governing electronic access to the courts, to order that the news media not electronically record that part of the hearing "if it appears that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence."  Where this authority is invoked to prohibit the news media from recording a video recording played in open court at a suppression hearing, the news media may report on the substance of the statements made in the recording but will be unable to disseminate the recording itself.

Conclusion.  The case is remanded to the single justice of the county court, with instructions to vacate the prior order that set aside the Superior Court judge's denial of the motion to impound, and to issue an order affirming the denial by the single justice of the Appeals Court of the defendant's request for interlocutory appellate relief.  In short, the motion judge's denial of the motion to impound is affirmed.

So ordered.