APPEALS COURT 
 
 QUINTEASHA DOSSANTOS vs. BETH ISRAEL DEACONESS HOSPITAL-MILTON, INC., & others[1]

 
 Docket:
 22-P-1061
 
 
 Dates:
 October 12, 2023 - November 12, 2024
 
 
 Present:
 Rubin, Singh, & Hershfang, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Medical Malpractice, Complaint, Expert opinion, Hospital, Standard of care, Tribunal. Impoundment. Uniform Rules on Impoundment Procedure. Evidence, Determination of medical malpractice tribunal, Medical record. Negligence, Medical malpractice, Hospital, Standard of care. Practice, Civil, Impoundment order, Dismissal.
 
 

             Civil action commenced in the Superior Court Department on December 24, 2019. 
            A motion to impound was heard by Robert B. Gordon, J.; a motion to dismiss was considered by Debra A. Squires-Lee, J., and entry of final judgment was ordered by her.
            Krzysztof G. Sobczak for the plaintiff.
            Megan M. Grew Pimentel for Thomas E. Fitzgerald.
            John D. Bruce for Suzzanne Merithew.
            John P. Puleo for Jonathan Anderson & others.
            Daniel Braun for Vanessa Martin & others.
            SINGH, J.  After a hearing in Superior Court, a medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B, determined that the plaintiff's offer of proof, including an expert report, was insufficient to allow the plaintiff's claim to go forward without posting a bond.  After the plaintiff failed to pay the bond, the case was dismissed.  The report by the plaintiff's expert was based on a review of the plaintiff's medical records, which were not provided to the tribunal.  The plaintiff had sought to submit the records in a manner that would shield them from public disclosure, but when her motion to impound the records was denied, she elected not to submit them at all.  On appeal, the plaintiff contends that the motion judge erred in denying her motion to impound and the tribunal erred in determining that the offer of proof was insufficient.  We affirm.
            Background.  The nineteen year old plaintiff went to the emergency department of Beth Israel Deaconess Hospital–Milton, Inc., complaining of abdominal pain, nausea, vomiting and diarrhea.  She was evaluated, treated, and discharged a few hours later with a diagnosis of urinary tract infection.  The following night, she returned to the emergency department for worsening abdominal pain.  Further evaluation, including an ultrasound and a computed tomography (CT) scan, showed results consistent with appendicitis.  The plaintiff was taken to surgery approximately twelve hours later.  Complications resulted in the plaintiff's hospitalization for approximately twenty days before she was discharged.
            Motion to impound.  Shortly after filing her complaint for medical malpractice, the plaintiff filed a motion to impound her medical records on the basis that "information contained in medical records is private and protected and should be treated as confidential."[2]  The judge denied the motion for failure to set forth "good cause" as required by Rule 7 of the Uniform Rules on Impoundment Procedure (2015).  The denial of the motion to impound was without prejudice to the plaintiff's making a future motion "addressed to particularized documents shown to warrant the protection of impoundment."[3]  Rule 7(a) of the Uniform Rules on Impoundment Procedure (after hearing, court may enter order of impoundment "for good cause shown").  On appeal, the plaintiff claims that the judge erred in determining that she failed to show good cause for impoundment.[4]  She contends that the privacy and confidentiality afforded medical records in various legal contexts establishes good cause for impoundment, without any further showing.
            We review a judge's decision on impoundment for abuse of discretion or other error of law.  See Commonwealth v. Chism, 476 Mass. 171, 182 (2017).  In determining whether a motion provides good cause to impound, a trial court judge must balance the rights of the parties, taking into account "all relevant factors, including, but not limited to, (i) the nature of the parties and the controversy, (ii) the type of information and the privacy interests involved, (iii) the extent of community interest, (iv) constitutional rights, and (v) the reason(s) for the request."  Id. at 178, quoting rule 7(b) of the Uniform Rules on Impoundment Procedure (applicable to both civil and criminal cases).  Whether the information sought to be impounded has already been disclosed is also a relevant consideration.  See Chism, supra at 179-180, citing Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 608 (2000) (Sharpe).
            In assessing the judge's exercise of discretion, we start with the common-law presumption of public access to judicial records.  See Chism, 476 Mass. at 177.  This presumption "encourages openness, transparency, and an informed public while discouraging misconduct, bias, and dishonesty," id., and "allows the public and the media to develop a full understanding of a judicial proceeding so that they may 'keep a watchful eye' on the judicial system," Commonwealth v. Winfield, 464 Mass. 672, 678 (2013), quoting Sharpe, 432 Mass. at 606.  The exercise of the power to restrict access must recognize that "impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be 'strictly construed in favor of the general principle of publicity.'"  Republican Co. v. Appeals Court, 442 Mass. 218, 223 (2004), quoting Commonwealth v. Blondin, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950).  "If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment."  New England Internet Café, LLC v. Clerk of Superior Court for Criminal Business in Suffolk County, 462 Mass. 76 (2012), quoting Sharpe, supra at 605.
            Here, the judge could have considered that this was a medical malpractice case in which the plaintiff's medical records were central to the litigation.  Although the plaintiff has an interest in the privacy of her medical information, the defendants also have an interest in their professional reputations.  The judge could have considered that the plaintiff's publicly filed offer of proof already contained substantial details from her medical records.  A narrowly tailored impoundment order would presumably exclude information already in the public domain.  It was incumbent on the plaintiff to specify which specific documents or portions thereof she sought to impound.  The judge afforded the plaintiff an opportunity to make a more particularized request, but the plaintiff declined.  Under the circumstances, we cannot say that the judge's decision on impoundment was "outside the bounds of reasonable alternatives" (citation omitted).[5]  L.L. v. Commonwealth, 470 Mass. 169, 184 (2014).
            Offer of proof.  The plaintiff's offer of proof was supported by an "expert opinion letter and report" (letter) of a general and acute care surgeon and surgical intensivist.  The letter stated that he had reviewed the plaintiff's emergency department notes and reports, radiology imaging and reports, operative notes and anesthesia records, progress and consultation notes, pathology reports, and discharge summary.  The letter summarized the plaintiff's hospital course, detailing the plaintiff's symptoms, the results of testing performed, and the measures taken to treat the plaintiff.  It was written, however, entirely in passive voice, without identifying any individual (by name, position, or role) who took or failed to take any specific action.  The letter concluded:
"Based on my review of the aforementioned records, it appears there have been several instances where the standard of care was not met, including a misdiagnosis, delayed diagnosis, and delayed treatment of appendicitis, leading to likely avoidable episodes of abdominal sepsis, need for laparotomy, Intensive Care Unit stay, prolonged antibiotic therapy, intra-abdominal abscess necessitating additional surgery, reactive pleural effusion necessitating thoracentesis, a lengthy hospital stay and recovery, and significant pain and suffering."
 
            On appeal, the plaintiff contends that her offer of proof was sufficient to allow the case to go forward without posting a bond.[6]  A medical malpractice tribunal is charged with determining whether the plaintiff's offer of proof is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.  See G. L. c. 231, § 60B.  A plaintiff's offer of proof will prevail if it shows that the defendant is a "provider of health care" within the meaning of the statute, there is evidence that the provider's "performance did not conform to good medical practice," and the plaintiff sustained damage therefrom.  Feliciano v. Attanucci, 95 Mass. App. Ct. 34, 37 (2019), quoting Kapp v. Ballantine, 380 Mass. 186, 193 (1980).  The tribunal must apply a standard "similar to that on directed verdict" to the evidence presented by the plaintiff.  Santos v. Kim, 429 Mass. 130, 137 (1999).  To apply that standard is to ask whether, taking into account all the evidence in its aspect most favorable to the plaintiff, a jury could reasonably return a verdict for the plaintiff.  See Tosti v. Ayik, 394 Mass. 482, 494 (1985), S.C., 400 Mass. 224, cert. denied sub nom. United Auto Workers, Local 422 v. Tosti, 484 U.S. 964 (1987).  We apply the same standard.  See Santos, supra.
            The plaintiff's offer of proof in this case suffered from two distinct infirmities.  First, the letter fails to identify any of the defendants as being responsible for any poor medical practice, or indeed for anything that happened at the hospital.  The letter states that review of the plaintiff's medical records shows "misdiagnosis, delayed diagnosis, and delayed treatment" and correlates these failures to the plaintiff's damages.  However, the letter does not identify any individual medical provider defendant who departed from the standard of care.  Although allowance must be made for the early stage of litigation, see Feliciano, 95 Mass. App. Ct. at 38-39, the offer of proof must provide a basis for liability for each defendant.  See Santos, 429 Mass. at 137 ("plaintiff must show that the defendant personally owed her a duty of care which he breached").  See also Kapp, 380 Mass. at 193-195 (although there was evidence that each defendant had some involvement in plaintiff's care, court concluded that offer of proof was sufficient as to some but not other defendants).  Since no medical records were provided, the only evidence of the defendants' involvement was the letter, which fails to identify any of the defendants.[7]
            Second, although the letter identifies a series of ways in which some unidentified defendant or defendants failed to meet "the standard of care," it does not specify what the standard of care in each instance actually required.  The letter does not provide the tribunal an adequate basis on which to evaluate the care given.  For example, the letter notes that an abdominal computed tomography (CT) scan was not obtained until the plaintiff's second visit to the emergency department, but it does not state that the failure to obtain a CT scan on the first visit was a deviation from the standard of care.  Likewise, the letter notes that the surgery did not take place until twelve hours after the results of the CT scan indicated the necessity for surgery; however, the letter does not state whether this time span was a deviation from the standard of care.[8]  Since misdiagnosis and delay can occur in the absence of malpractice, the expert's letter fails to show that "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."  G. L. c. 231, § 60B.
            Essentially, the letter restates the allegations in the complaint and concludes, "Based on my review of the aforementioned records, it appears there have been several instances where the standard of care was not met, including a misdiagnosis, delayed diagnosis, and delayed treatment," without establishing whether these outcomes were the result of medical providers not conforming to good medical practice.  See Booth v. Silva, 36 Mass. App. Ct. 16, 20 (1994) (acceptable offer of proof must be more than conclusory allegations).
            To the extent that the plaintiff contends that the allegedly erroneous denial of her motion to impound medical records deprived her of the ability to meet her proof, the facts do not bear this out.  In an offer of proof to a medical malpractice tribunal, extrinsic evidence is not required to substantiate factual allegations in an expert report.  See Booth, 36 Mass. App. Ct. at 21.  Although the tribunal did not have the plaintiff's medical records, the expert did.  The denial of the motion to impound did not stand as an impediment to the expert's ability to state the standard of care and to identify the departure from the standard of care with respect to the individual medical provider defendants.  Accordingly, the plaintiff's offer of proof was insufficient, and her complaint was properly dismissed.
Judgment affirmed.
            RUBIN, J. (dissenting.)  If the facts provided to the medical malpractice tribunal are proven, we have before us an obvious case of medical malpractice committed upon a nineteen year old that caused serious injury.  The court, however, declines to allow the injured young woman to go forward with her suit.  It affirms a plainly erroneous ruling of the motion judge denying impoundment of her medical records, a ruling that effectively limited what the young woman could include in her offer of proof before the medical malpractice tribunal.  Indeed, today's decision is the only Massachusetts appellate case I have been able to find, published or unpublished, that has ever upheld an order denying the impoundment of medical records.
            The appropriate way to proceed would be for us to reverse that ruling of the motion judge, order the young woman's medical records impounded, and remand to allow those records to be submitted to the medical malpractice tribunal for its consideration.  Private individuals' medical records are routinely impounded in the circumstances of this case.  A meritless opposition to her motion to impound -– a motion that was, in fact, quite reasonably unopposed by all the defendants save one –- does not provide a proper ground for terminating this young woman's apparently meritorious medical malpractice claim.  Indeed, if the motion judge's ruling is upheld, many injured individuals may be deterred from bringing their own meritorious malpractice claims.
            Further, in my view, even if we do not reverse the denial of the plaintiff's motion to impound, what remained in the offer of proof, even without the medical records, was nevertheless by itself sufficient to meet the low bar before the medical malpractice tribunal.  The statute that provides for screening of medical malpractice claims by a tribunal requires the tribunal to "determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff’s case is merely an unfortunate medical result."  G. L. c. 231, § 60B, first par.  This was obviously not the latter.  And as this court has recently explained,
"It is important to remember that the tribunal's evaluation of the plaintiff's offer of proof occurs at a very different stage of the litigation in comparison to a judge's evaluation of the evidence on a motion for directed verdict. . . . [T]he offer of proof before the tribunal is made without the benefit of discovery and at the earliest stage in the life of the litigation -— even before motions to dismiss.  For this reason, the statute explicitly contemplates that a plaintiff's offer of proof to the tribunal need not meet the full evidentiary burden of proof at trial; instead, the offer of proof, taken in the light most favorable to the plaintiff, need only be sufficient to raise a legitimate question of liability, with proper evidentiary substantiation to follow."
Feliciano v. Attanucci, 95 Mass. App. Ct. 34, 38 (2019) (Wolohojian, J.).  
            The court concludes the offer of proof does not raise such an issue essentially because, unaccompanied by the medical records, it does not (because it could not) specify which individual provider of medical care took which step in the process of misdiagnosing the plaintiff and failing to treat her in a timely manner.  But, as we recently explained in Feliciano, the details of who had responsibility for what at the hospital is not something the plaintiff is required to know at this stage of the litigation, and its absence from the offer of proof does not defeat a conclusion that the offer is sufficient to raise a legitimate question of liability. See Feliciano, 95 Mass. App. Ct. at 40-41.
            For these reasons, this case should not have been dismissed.  I respectfully dissent.
            Background.  1.  Factual allegations.  The following recitation of the facts in layperson's terms is drawn from the plaintiff's expert's report contained in her offer of proof; where relevant, specific medical details will be included in the discussion below.
            The then nineteen year old plaintiff went to the emergency department at the Beth Israel Deaconess Hospital–Milton, Inc. (BID-Milton), after suffering crampy abdominal pain, nausea, vomiting, and diarrhea for the prior twenty-four hours.  She was examined and some tests were run.  Though they were not consistent with a urinary tract infection and warranted further tests to eliminate the possibility of appendicitis, no such tests were done:  she was given an incorrect diagnosis of urinary tract infection, was given a prescription for antibiotics, and was discharged a few hours after her arrival.
            The next night, she returned, now with worsened abdominal pain.  Some tests were again run, and several hours after her arrival, she was given a computed tomography (CT) scan, the results of which were consistent with acute, nonperforated appendicitis.
            Even then, she was not taken for the obviously urgently needed surgery in a timely manner.  Rather, surgery, which was supposed to be a laparoscopy, was performed over twelve hours later, at 12:50 P.M. the next day.  By then, her appendix had burst, something discovered during the surgery, and she had intra-abdominal sepsis.  A more extensive open surgery (open laparotomy) was required, and she was moved postoperatively to the intensive care unit (ICU).
            Although she survived, she remained in the hospital for nineteen days.  On the seventh day after the surgery, she underwent a CT scan that showed a sizeable abdominal abscess.  She then underwent a second surgery to address the abscess.  On the twelfth day after the first surgery, she developed persistent low-grade fevers and chest pain, and she was diagnosed with a left pleural effusion.  This required yet another procedure, this one to drain fluid from her pleural cavity.  She was finally discharged twenty days after her initial visit to the hospital.
            The plaintiff's expert is Dr. George Kasotakis, a licensed physician in the State of Massachusetts, board certified in general surgery and surgical critical care by the American Board of Surgery and in acute care surgery by the American Association for the Surgery of Trauma, who was an assistant professor of surgery at the Boston University School of Medicine.  According to Dr. Kasotakis, the medical provider defendants deviated from the standard of care including by misdiagnosis, delayed diagnosis, and delayed treatment of appendicitis, leading to likely avoidable episodes of abdominal sepsis, the need for a laparotomy, admission to the ICU, prolonged antibiotic therapy, an intra-abdominal abscess necessitating additional surgery, reactive pleural effusion necessitating thoracentesis, a lengthy hospital stay and recovery, and significant pain and suffering.
            2.  Proceedings below.  The plaintiff brought this action against BID-Milton; Harvard Medical Faculty Physicians At Beth Israel Deaconess Medical Center, Inc. (HMFP); three doctors (David Purcell and Jonathan Anderson, both employed by HMFP, and Thomas Fitzgerald); two nurses (Lyn McKinney and Vanessa Martin); and a physician assistant (Suzzanne Merithew).  The complaint alleges that Purcell, Anderson, McKinney, and Martin participated in the plaintiff's evaluation on the day she originally was seen in the emergency department and was discharged.  It alleges that the next day when she returned, after she had a CT scan and was diagnosed with appendicitis, she was transferred by Merithew to Fitzgerald's service.  The complaint further alleges that Merithew, under Fitzgerald, admitted her to the surgical service at 1 A.M., but that Fitzgerald began the surgery on her twelve hours later.  It alleges that "average qualified members of the medical profession knew or should have known of the signs and symptoms, risks, and potential consequences of appendicitis and the need for its urgent treatment."  Finally, it alleges that the defendants acted negligently and that, among other things, the negligent evaluation and misdiagnosis by Purcell, Anderson, McKinney, and Martin led to a delay of forty-four hours in treating the plaintiff's appendicitis, and that the negligent actions of Merithew and Fitzgerald caused a twelve-hour delay in that treatment, resulting in all that the plaintiff subsequently suffered.
            The plaintiff filed a motion to impound her medical records, deliberately filing the motion before she had filed her offer of proof, to which she intended to attach her medical records.  Indeed, the plaintiff's motion stated,
"This motion is being served/filed now, before all the Defendants have yet answered because due to the medical malpractice claims in this case once the first medical malpractice defendant(s) answers, pursuant to Superior Court Rule 73, an Offer of Proof will have to be filed which will require reference [to] (and potentially inclusion of) confidential medical records."
            Only defendant Fitzgerald opposed the motion.  None of the other defendants did so.  Fitzgerald asserted that the plaintiff had not shown "good cause" justifying impoundment, but the only argument he made in support of his opposition was a mistaken one that the order would somehow "restrict the manner and extent to which defendants, the Court, and their representatives can access [the] plaintiff's medical records . . . caus[ing] substantial prejudice to the defense."  
            The parties, the court, and counsel of course have access to impounded material.  The Uniform Rules on Impoundment Procedure say so explicitly:  "'Impoundment' shall mean the act of keeping some or all of the case record separate and unavailable for public inspection.  Impounded records are not accessible to anyone other than the court, clerk, authorized court personnel, attorneys of record, and the parties to the case, unless otherwise ordered."  Rule 1(b)(9) of the Uniform Rules on Impoundment Procedure (2015).
            Prior to the filing of the motion to impound, and after it had been served on the defendant under Rule 9A of the Rules of the Superior Court (2018), the first answer to the complaint was filed by a defendant.  As required by Rule 73(1) of the Rules of the Superior Court (2020), within fifteen days, the plaintiff filed an offer of proof that included her expert's report in the form of a letter.  Her filing explained that, due to confidentiality concerns, the medical records were not "being attached to this offer of proof."  It stated that "excerpts from said records will be offered -- impounded -- as Exhibit B, once the motion for impoundment is ruled upon."  And it said that if the contents of the medical records were contested by the defendants, the medical records would be submitted to the court upon allowance of the motion to impound or under a protective order.
            Except for HMFP, the defendants all moved for a hearing before a medical malpractice tribunal.
            Seven weeks after Fitzgerald's opposition to the plaintiff's motion for impoundment was filed, the motion judge denied the motion to impound, writing "DENIED for failure to make the showing of good cause required by the uniform rules of impoundment procedure."  He later denied a motion for reconsideration.  The plaintiff therefore did not submit the medical records to the court, and the tribunal had before it only her offer of proof.
            As to each defendant, the tribunal found that the offer of proof was insufficient to "raise a legitimate question of liability."  The tribunal found for the defendants, concluding that what happened to the plaintiff "is merely an unfortunate medical result."  This meant that the plaintiff could proceed in court only by posting a $6,000 bond.  See G. L. c. 231, § 60B, sixth par.  After she failed to do so, the case was dismissed, and the plaintiff appealed.
            Discussion.  1.  Motion to impound.  To begin with, the erroneous denial of the motion to impound hamstrung substantially the plaintiff's ability to provide to the tribunal information about the care and treatment she was provided.  Impoundment requires a showing of good cause.  "In [determining whether good cause is shown], the judge must take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request" (quotations and citations omitted).  Republican Co. v. Appeals Court, 442 Mass. 218, 223 (2004).
            Medical records, of course, contain the type of intensely personal and private information that is properly subject to impoundment.  As the defendants describe, "Plaintiff's medical records are protected by the confidentiality regulations ensured by the Health Insurance Portability and Accountability Act 45 C.F.R. §§ 160, 164 ('HIPAA')," though HIPAA does allow hospitals to provide medical records in medical malpractice actions in which those hospitals are defendants.  The records in this case are also confidential under State statute, see G. L. c. 111, § 70, and State common law, see Alberts v. Devine, 395 Mass. 59, 67, cert. denied sub nom. Carroll v. Alberts, 474 U.S. 1013 (1985) ("The courts that have imposed on physicians a duty of confidentiality and have recognized a cause of action to enforce that duty have grounded their decisions on the determination that public policy favors the protection of a patient's right to confidentiality").
            The Supreme Judicial Court has held that because of the type of information and the privacy interests involved, those whose otherwise confidential medical records are submitted during litigation are entitled to have them impounded.  In Fitzgerald v. District Court Dep't of the Trial Court, 471 Mass. 1001, 1001 & n.2 (2015), for example, the plaintiff there submitted medical records (as well as statutorily protected mental health records) as part of the evidence in support of his claim that he had pleaded guilty in the underlying case while he was forcibly medicated.  On his motion, the District Court judge had issued an order impounding the record appendix, which contained mental health records otherwise protected from disclosure by the Department of Mental Health pursuant to G. L. c. 123, but the plaintiff subsequently filed a motion seeking to have the Supreme Judicial Court impound the entire case file.  Id. at 1001 n.2.  The court held that he "has not demonstrated that there is good cause to impound the entire case file, but we shall amend the previous order of impoundment so that it includes all of his medical and mental health records wherever they may appear in the file of the case" (emphasis added).  Id.
            In contrast, in this case, the motion judge denied the motion to impound, concluding that the "good cause" required by the rules had not been shown.  This is obviously wrong.  The interest in the confidentiality of the records in this case is codified in Federal, as well as in State statutes, and enshrined in the common law.  That provides good cause for impoundment, precisely the same good cause supporting the Supreme Judicial Court's impoundment of medical records in Fitzgerald.
            In denying the subsequent motion for reconsideration, the judge suggested that what he called the plaintiff's "summarily asserted interest in the confidentiality of her medical records, to the extent such interest survives the disclosures already made in her filed pleadings, may be reasonably safeguarded through a protective order (limiting the use and dissemination of such records) entered under Mass. R. Civ. P. 26 (c)," as amended, 474 Mass. 1401 (2016).[1]  But a protective order under Mass. R. Civ. P. 26 (c) is no substitute for impoundment.  Protective orders are available to limit the scope or manner of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Id.  They are not the equivalent of impoundment orders.  (The plaintiff did file a motion for a protective order.  After the denial of the motion for impoundment, the judge denied that motion as well.  That denial is not before us.)
            The defendants assert that there was no error in the denial of the motion to impound and the motion for reconsideration because the "plaintiff has never claimed with any specificity that there is anything in her records that would render the protections by HIPAA or any other state o[r] federal law inadequate," and that the "plaintiff does not state with any particularity at all what medical records must be impounded, for what reason, or what 'intensely personal' information is contained in the records.  Clearly, the 'good cause' test requires the [p]laintiff to prove that the records contain more than basic medical information found in all medical records."
            This is a surprising and incorrect argument from medical providers and a hospital, who, one might hope, would consider all such information intensely personal just as every patient does.  But, in any event, as the Supreme Judicial Court's treatment of medical record impoundment shows, "basic medical information" is as entitled to protection as any other medical information if it is contained in a confidential medical record, and parsing one's medical records is not required in order to have them impounded.  See Fitzgerald, 471 Mass. at 1001 n.2.[2]
            The defendants also argue, as defendant Fitzgerald did below, that if impoundment orders such as that sought here are allowed (as they routinely are), "the ability of medical professionals to defend claims of negligence against them would be compromised. . . .  Restricting access of Defendants and the Court to a plaintiff’s medical records in a case based around medical care would be highly prejudicial to the defense’s case and is not necessary."  Indeed, this is the only interest the defendants put forward against the plaintiff's interest in the confidentiality of her medical information.
            But this argument reflects only a misunderstanding of the nature of impoundment orders.  Under the explicit terms of Rule 1(b)(9) of the Uniform Rules on Impoundment Procedure (2019)1, impounded documents are unavailable for public access or inspection, but are, as they must be, accessible to "the court, clerk, authorized court personnel, attorneys of record, and the parties to the case."
            Finally, although I may be misreading the opinion, the majority appears to suggest that the privacy interest in medical records is outweighed by the defendants' "interest in their professional reputations."  Ante at        .  But this is not argued by any party, nor has my research revealed that such an interest has ever been cited in any judicial opinion in any jurisdiction as part of the calculus surrounding the propriety of impounding medical records.  Of course the defendants do have an interest in their professional reputations.  However, that interest may be vindicated by their success in defending against the plaintiff's claims of malpractice.  But it would be as wrong as it would be novel to suggest that public exposure of a patient's medical records is necessary to vindicate a medical professional's interest in their professional reputation such that such confidential records (which might in any event reveal malpractice) cannot be impounded.  Of course, a defendant in a medical malpractice action is entitled to examine and utilize a patient's relevant medical records.  But under our law, it is not a condition of bringing a malpractice action that one make all of one's private medical information available to the public.
            Because of the erroneous denial of the motion to impound, the nineteen year old plaintiff was improperly placed in the situation of being unable to submit her medical records to the tribunal without exposing them to the public.  The order denying impoundment should be reversed, and the case remanded for a new hearing before the tribunal, at which the plaintiff can submit a more comprehensive offer of proof, including her impounded medical records.  I respectfully dissent from the court's failure to take this path.
            2.  Offer of proof.  The majority also concludes that without those records, the offer of proof made to the tribunal was insufficient to meet the tribunal's standard for allowing the case to proceed without the posting of a bond.  As I have said, I would reverse the impoundment order, which would eliminate the need to address the sufficiency of the offer of proof shorn of the medical records on which it was intended to rely.  However, because the court does not reverse the denial of the impoundment order and addresses the issue, I must as well, and, under binding case law, I disagree that the offer of proof here was insufficient.
            As our recent decision in Feliciano teaches, the standard before the tribunal is quite low:  "a plaintiff's offer of proof to the tribunal need not meet the full evidentiary burden of proof at trial; instead, the offer of proof, taken in the light most favorable to the plaintiff, need only be sufficient to raise a legitimate question of liability, with proper evidentiary substantiation to follow."  Feliciano, 95 Mass. App. Ct. at 38.  And as Feliciano itself demonstrates, because we are at such an early stage of the litigation, that evidence may be sufficient to support an inference that there is a legitimate question of liability even when particular facts essential to liability, such as whether a particular treating physician was even involved in the patient's care when the relevant failures to act took place, are not contained in the offer of proof. See id. at 40-41.
            The expert's report in this case was sufficient.  In it, the plaintiff's expert specifies that the standard of care was not met, and sets out the three ways in which it was not: 
"[I]t appears there have been several instances where the standard of care was not met, including a misdiagnosis, delayed diagnosis, and delayed treatment of appendicitis, leading to likely avoidable episodes of abdominal sepsis, need for laparotomy, Intensive Care Unit stay, prolonged antibiotic therapy, intra-abdominal abscess necessitating additional surgery, reactive pleural effusion necessitating thoracentesis, a lengthy hospital stay and recovery, and significant pain and suffering."
The expert again states that the standard of care was not met:  "There were several instances in [the plaintiff's] case where the standard of care was not met, and that likely predisposed her to the complications she developed and her lengthy hospital stay and recovery." 
            The expert then explains in a separate paragraph what the standard of care was with respect to each aspect of the plaintiff's treatment, and each of the ways it was not met.  The first states there was a "[f]ailure to diagnose and manage acute appendicitis, and misdiagnosis of a urinary tract infection upon [the plaintiff's] initial presentation."  Referring to a number of the findings made at the time of the plaintiff's evaluation that are described in the report, the expert continued: 
"A physician's note from 01/05/2017 clearly states absence of dysuria, and despite an unremarkable urinalysis (mild pyuria, microscopic hematuria, negative nitrites/leukocyte esterase) and presence of significant gastrointestinal symptoms, the erroneous diagnosis of a urinary tract infection was made.  At the same time, the unusually high white blood cell count, elevated amylase (which can be elevated in appendicitis or other gastrointestinal tract conditions) and abdominal pain were not worked up further to rule out appendicitis.  The above led to an inappropriate discharge from the emergency department." 
            The expert is thus clear that, under the standard of care, in a patient presenting without dysuria, with an unremarkable urinalysis, and with gastrointestinal symptoms, a diagnosis of urinary tract infection is "erroneous."  Further, given elevated amylase, an elevated white blood cell count, and abdominal pain, the standard of care calls for a further work up to rule out appendicitis, which was not undertaken.  The expert further says that the plaintiff was not only improperly diagnosed, but that she was "inappropriate[ly] discharge[d] from the emergency department."
            The expert explains, "Acute appendicitis can be a significant source of morbidity, and even mortality, unless recognized and managed appropriately early.  The condition mandates urgent intervention in the presence of peritoneal signs and significant physiologic derangement."  He notes that when finally examined on the second visit, the plaintiff had shown peritoneal signs; he described physiologic derangement at both visits, including tachycardia (a rapid heartbeat) of 114 beats per minute at the first visit, which had increased to 140 beats per minute by the second. 
            In the second paragraph explaining the proper standard of care, he writes, 
"An abdominal CT scan was not obtained until [the plaintiff's] second visit to the Emergency Department, over 24 hours after the initial presentation, leading to a significant delay in the diagnosis of acute appendicitis.  To a reasonable degree of medical certainty, this delayed diagnosis resulted in the interval appendiceal rupture, and increased the probability of adverse sequelae, such as development of abdominal sepsis; difficult appendectomy with a high likelihood of conversion to an open operation; need for transfer to a higher level of care; intra-abdominal abscess formation; reactive inflammatory changes to other organ-systems; prolonged hospital stay and recovery."
The expert is thus clear that the standard of care called for an abdominal CT scan at the plaintiff's first presentation at the hospital, not over twenty-four hours later at her second.
            Finally, in the third paragraph, the expert opines: 
"After the diagnosis of appendicitis was made, there was failure to timely pursue surgical management as indicated.  Although dictation time of the abdominal CT was recorded at 00:33 am on 01/07/2017, [the plaintiff] was not taken to surgery until the next afternoon, after more than 12 hours had elapsed (anesthesia start time was 12:50 pm on 01/07/2017).  This delay took place despite signs of significant physiologic derangement -- tachycardia with 140 heart rate; metabolic acidosis with a serum bicarbonate level of 18; and worsening lactic acidosis with an initial lactate level of 3, rising to 3.8.  To a reasonable degree of medical certainty, the delayed diagnosis resulted in the interval appendiceal rupture, and likely set her up for the aforementioned adverse events."
Again, this is an opinion that, given the plaintiff's symptoms, waiting twelve hours to operate after her diagnosis of appendicitis violated the standard of care.
            Even without the expert evidence, we all know that, as the expert stated, treating appendicitis is "urgent."  The expert tells us that the plaintiff had symptoms of appendicitis, but the medical professionals in the emergency department, in violation of the standard of care, failed to take steps to rule it out, instead, and again in violation of the standard of care, misdiagnosing it as a urinary tract infection and discharging her.  When she again appeared at the hospital the next night and was finally diagnosed with appendicitis, the surgeon to whose service she was admitted failed to operate on her for twelve hours, again in violation of the standard of care.  These violations resulted in her burst appendix and all the terrible consequences that followed.
            The expert's report certainly "raise[s] a legitimate question of liability."  G. L. c. 231, § 60B, first par.  The expert's report attributes the failures to those who provided the plaintiff's care at BID-Milton, and the complaint alleges only that Purcell, Anderson, McKinney, and Martin participated in her evaluation and discharge on her first visit, and that Merithew and Fitzgerald were involved in the plaintiff's admission and delayed surgery during the visit when she returned the next day.
            The majority, however, says that the failure before discovery to identify which defendant did what means that the plaintiff has not raised a legitimate question of liability, so a finding for the defendants by the tribunal was required.  But the cases the majority cites contain no such rule.  Feliciano indicates that how the errors, failures, and delay at the first visit were caused by the specific actions or inactions of the particular members of the plaintiff's care providers (Purcell, Anderson, McKinney, and Martin) is not something the plaintiff was required to include in her offer of proof at this prediscovery stage of the litigation.  See Feliciano, 95 Mass. App. Ct. at 40-41.  And, while it is a reasonable inference that the delay in undertaking the surgery was the responsibility of Fitzgerald, the attending surgeon under whom the plaintiff was admitted to the surgical service and who performed the surgery, the plaintiff is not required to know at this early stage whether it was Fitzgerald or Merithew or both who were responsible for whatever decisions led to that result.  These are "factual question[s that] should not have been decided against the plaintiff, without the benefit of discovery, at this stage."  Id. at 41.  In requiring this specificity -– by stating that the plaintiff was required to disprove possible causes of delay in surgery aside from the defendants, ante at n.8, something properly an issue for trial -– the majority has raised the burden on a plaintiff beyond what is required at this stage of the litigation.
            Conclusion.  I would vacate the judgment, reverse the order denying the motion for impoundment, and remand for a new hearing before the tribunal at which the impounded medical records could be submitted.  This would obviate the need to assess the sufficiency of the expert's report standing alone.  In the absence of such a reversal and remand, I would hold that the expert report was sufficient to raise a legitimate question of liability, and thus reverse the judgment.  I therefore respectfully dissent.
 
footnotes

 
            [1] Associated Physicians of Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; David J. Purcell; Jonathan Anderson; Lyn McKinney; Vanessa Martin; Suzzanne Merithew; and Thomas E. Fitzgerald.  The institutional defendants were sued based on vicarious liability not subject to the malpractice tribunal.
            [2] In her motion, the plaintiff cited the following in support of her position that medical records, as a general matter, should be considered private and confidential:  G. L. c. 111, §§ 70, 70E (b) (establishing patient's right to confidentiality of medical records maintained by health care facility); the Federal Health Insurance Portability and Accountability Act of 1998 (HIPAA), 45 C.F.R. Pts. 160 and 164 (2024) (establishing national standards to protect privacy of health care information by requiring certain health plan and health care entities to establish safeguards regarding disclosure); Alberts v. Devine, 395 Mass. 59, 68, cert. denied sub nom. Carroll v. Alberts, 474 U.S. 1013 (1985) (declaring physician's duty not to disclose patient's medical information).
            [3] Rather than make a more tailored motion to impound, the plaintiff filed a motion for a protective order concerning the confidentiality of discovery documents, including medical records.  The judge denied this motion.  That denial is not at issue in this appeal. 
            [4] The plaintiff appealed the order denying the motion to impound to a single justice of the Appeals Court.  The single justice denied relief.  Since the parties did not brief the issue, we do not consider the impact of the proceedings before the single justice on this appeal.
            [5] In response to the plaintiff's motion to clarify or reconsider the order, the judge observed that the plaintiff's position -- that an impoundment order was justified on the basis that medical records are generally considered confidential –- would mean that every medical record in every civil case would have to be impounded upon request.  The judge also raised a concern that the plaintiff's interest in the confidentiality of her medical information may have been nullified by the disclosures already made in the offer of proof.
            [6] If the medical malpractice tribunal concludes that a case does not "raise a legitimate question of liability appropriate for judicial inquiry," G. L. c. 231, § 60B, requires a plaintiff to post a bond of $6,000 in order to continue with the case.  The plaintiff did not do so here, and the judge dismissed the case.
            [7] The plaintiff's complaint alleges that four of the defendants were involved in the initial emergency department visit, four additional individuals –- not sued -– were involved in the subsequent emergency department visit, and two additional defendants were involved in the surgery.  The letter treats all of the plaintiff's health care providers as an undifferentiated group.  See Kapp, 380 Mass. at 195 (contention that defendant was part of "consulting team" was insufficient for liability to attach where evidence did not support claim that defendant had participated in medical care claimed to be deficient).  Contrast Feliciano, 95 Mass. App. Ct. at 39-40 (offer of proof established that each defendant was health care provider to plaintiff by setting forth their roles in the procedures under scrutiny). 
            [8] Indeed, the letter does not indicate what took place during this twelve-hour period.  Any opinion that this delay deviated from the standard of care would need to take into account the actual facts leading to the delay.  See Cooper v. Cooper-Ciccarelli, 77 Mass. App. Ct. 86, 92 (2010) (expert opined that failure to order CT scan deviated from standard of care but did not take into account fact that defendant consulted with two more experienced specialists who indicated different course, such that expert opinion was not grounded in evidence).
 
footnotes for dissenting

 
            [1] The judge did not suggest, and the defendants did not argue in the trial court or before us, that the filing of the offer of proof justified denial of the motion to impound, as the court majority appears to do.  See ante at        .
            [2] The defendants do not argue here and did not argue below that filing the offer of proof while the motion to impound was pending has any bearing on the propriety of issuance of an order.  The majority, in a somewhat similar vein, suggests something the defendants do not, that the motion was properly denied because some medical information was contained in the offer of proof.  As this court's own impoundment orders, and the innumerable ones issued in the courts of this Commonwealth each year, make clear, when evaluating a motion to impound medical records, the court does not examine those records to determine whether any information in them has otherwise become publicly available.  If members of the public can read or infer part of what the medical records contain from public filings, it does not entitle members of the public to look at a party's impounded medical records themselves.  In any event, this argument was neither raised before the motion judge or in this court.